IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COINTREAU CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-02257-N |
| | § | |
| PURA VIDA TEQUILA COMPANY, | § | |
| LLC, and LA MADRILEÑA S.A. DE C.V., | § | |
| | § | |
| Defendants. | § | |

## ORDER

This Order addresses Plaintiff Cointreau Corporation's ("Cointreau Corp.") motion

for preliminary injunction [6]. Because Cointreau Corp. shows a substantial likelihood of

prevailing on the merits of its dilution claim under federal law, the Court grants the motion

and enjoins Defendants Pura Vida Tequila Company, LLC ("Pura Vida"), and La Madrileña

S.A. de C.V. ("La Madrileña") (collectively "Defendants") as set forth below.[1] As Cointreau

---

[1]Defendants also move for leave to file a surreply with respect to Cointreau Corp.'s motion for preliminary injunction. The Court views surreplies with disfavor. This district's local rules include no provision for surreplies, *see* Local Rule 7.1, and a "court will permit surreplies only where truly exceptional or extraordinary circumstances exist." *Gen. Motors Corp. v. Am. Ecology Envtl. Services Corp.*, No. 3:99-CV-2625-L, 2001 WL 1029519, at *1 n.2 (N.D. Tex. Aug. 30, 2001) (Lindsay, J.).

Defendants maintain that the economic difficulties they continue to experience as a result of this lawsuit justify a surreply. They hope by way of surreply to clarify the provenance of the translation in Defendants' appendix of the Mexican case discussed below and to respond to allegedly new arguments advanced in Cointreau Corp.'s reply brief. Defs.' Mot. for Leave to File Surreply 2-3. As discussed below, Defendants' difficulties relating to sale of a product that is likely to be found to violate federal law merit little equitable consideration. Further, the Court does not consider the Mexican case as precedent and, as a matter of course, does not entertain arguments raised for the first time by Cointreau Corp.

Corp.'s likely success on its federal dilution claim entitles it to a preliminary injunction, the Court will not address Cointreau Corp.'s other claims in this order.

## I. THE COINTREAU-CONTROY TRADEMARK DISPUTE

This case concerns a trademark dispute between two competing brands of orange liqueur, Cointreau and Controy. Cointreau Corp. owns and enforces the Cointreau trademarks in the United States. La Madrileña is the Mexican maker, and Pura Vida is the American importer, of Controy.

Edouard Cointreau first distilled his eponymous orange liqueur in 1875. The Cointreau distillery began selling the liqueur in that same year and brought it to market in the United States by 1885. Today, Cointreau is the second most popular orange liqueur in the United States by volume, earning more than $37 million annually. Cointreau Corp. owns several trademark registrations at issue in this case (collectively the "Cointreau Marks"). These registrations fall into one of three categories. First, one registration, dating from 1935, is for the name "Cointreau" (the "Cointreau Name Mark"). Aff. of David Babkow in Supp. of Pl.'s Mot. Prelim. Inj. [hereinafter Babkow Aff.], Ex. A [7-1]. Second, three registrations, from 1935, 1985, and 1998 respectively, cover the configuration of Cointreau's square bottle. Babkow Aff., Ex. B [7-1]. Third, one registration, from 1936, is for the banner appearing on labels on Cointreau bottles, which contains the name "Cointreau." Babkow Aff., Ex. C [7-1].

_____

in a reply. The Court accordingly denies the motion.

La Madrileña has sold Controy in Mexico since the 1930s and dominates the Mexican orange liqueur market with a greater than 60% market share. La Madrileña has only recently arranged to export its liqueur to the United States. As of January 1, 2012, Pura Vida has the distribution rights for Controy outside Latin America.

Cointreau Corp. asserts in this lawsuit that Controy's name, bottle shape, and bottle label infringe on the Cointreau Marks. Cointreau Corp. consequently seeks monetary damages from and an injunction against Defendants under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and the Texas anti-dilution statute, TEX. BUS. & COM. CODE § 16.29, alleging both trademark infringement and dilution. On July 17, 2012, Cointreau Corp. moved for a preliminary injunction on its federal and state claims.

## II.  COINTREAU CORP. IS ENTITLED TO INJUNCTIVE RELIEF ON ITS FEDERAL DILUTION CLAIM

"[T]he decision to grant or deny a preliminary injunction lies within the sound discretion of the district court." *Energy Dev. Corp. v. St. Martin*, 112 F. App'x 952, 957 (5th Cir. 2004). A preliminary injunction is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion. *Harris County v. CarMax Auto Superstores, Inc.*, 177 F.3d 306, 312 (5th Cir. 1999). To obtain a preliminary injunction, the movant must establish the following: (1) a substantial likelihood that the movant will ultimately prevail on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the preliminary injunction is denied; (3) that the potential injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that granting the preliminary injunction will

not disserve the public interest. *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011). As laid out below, Cointreau Corp. has established each factor.

### A. Cointreau Corp. Is Substantially Likely to Succeed on Its Federal Dilution Claim

Section 43(c) of the Lanham Act, also known as the Federal Trademark Dilution Act ("FDTA"), provides as follows:

> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1) (codified as amended by the Trademark Dilution Revision Act of 2006, Pub. L. No. 109–312, 120 Stat. 1730). Dilution may manifest itself either through "'blurring,' a diminution in the uniqueness or individuality of the mark, or . . . 'tarnishment,' an injury resulting from another's use of the mark in a manner that tarnishes or appropriates the goodwill and reputation associated with the plaintiff's mark." *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1081 (5th Cir. 1997) (citing 3 J. THOMAS MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION §§ 24:67-69 (2d ed. 1984); *The Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 965-66 (2d Cir. 1996)).

To state a dilution claim under the FTDA, a plaintiff must show that (1) it owns a famous and distinctive mark; (2) the defendant commenced using a mark in a manner that dilutes the famous mark; (3) the similarity between the plaintiff's mark and the defendant's mark gives rise to an association between the two marks; and (4) the association is likely to

impair the distinctiveness of (i.e., blur) or harm the reputation of (i.e, tarnish) the plaintiff's marks. *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 536 (5th Cir. 2012) (citing *Louis Vuitton Malletier S.A. v. Haute Diggity Dog*, *LLC*, 507 F.3d 252, 264-65 (4th Cir. 2007)). Cointreau Corp. is substantially likely to prove all of these elements with respect to its claim that the trade name "Controy" dilutes the Cointreau Name Mark.

   *1.  The Cointreau Name Mark Is Famous and Distinctive.* – The FTDA and Fifth Circuit precedent require a plaintiff to prove that its mark is both famous and distinctive.

   *(a)  Famousness.* "A mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A).[2] The FTDA provides that a court determining whether a mark is famous may consider all relevant factors, including (1) the duration, extent, and geographic reach of the mark's advertising and publicity; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (3) the extent of the mark's actual recognition; and (4) whether the mark was registered. *Id.* Analysis of these factors demonstrates that the Cointreau Name Mark is famous.

   <u>First</u>, Cointreau Corp. and its corporate parents have sold Cointreau in the United States since at least 1885. See Babkow Aff. ¶ 6. But Cointreau Corp. has not provided the

---

   [2]Because the FTDA allows a court to enjoin a defendant who commences using a famous mark only "after the [famous] mark has become famous," *id.*, a plaintiff must prove that the allegedly diluted mark achieved fame *before* the defendant began using the allegedly diluting mark in a way that blurs or tarnishes the famous mark. Here, Defendants did not begin importing Controy until 2012. Aff. of Stewart L. Skloss [hereinafter Skloss Aff.], Ex. B in App. to Defs.' Resp. to Pl.'s Mot. Prelim. Inj. [12-10] ¶¶ 4-6. The Court accordingly considers evidence up to that point.

ORDER – PAGE 5

Court with evidence of the duration of the advertising and publicity activities involving Cointreau. It has, however, demonstrated that these activities have are significant in both extent and geographic reach. As to extent, Cointreau Corp. spends $7 million annually on promoting Cointreau in the United States, *id.*¶ 27, and it advertises through television, print, the internet, and social media sites. *Id.* ¶ 26. Regarding geographic reach, Cointreau Corp. has supplied the Court with numerous unsolicited articles and other print items from various national and local media sources that include the Cointreau Name Mark. Babkow Aff., Ex. E [7-2]. Moreover, Cointreau Corp. has also provided spreadsheets detailing an extensive amount of advertising material promoting Cointreau in publications from around the United States. Babkow Aff., Ex. F [7-4]. This factor accordingly weighs in favor of Cointreau's famousness.

Second, Cointreau is the second most popular orange liqueur by sales volume in the United States. Babkow Aff. ¶ 15. Sales of Cointreau in the United States alone have exceeded $37 million in each of the last five years. *Id.* ¶ 28. Worldwide, some 13 million bottles of Cointreau are sold each year in more than 200 countries. *Id.* ¶ 13. This factor likewise favors a finding of famousness.

Third, neither Cointreau Corp. nor Defendants have introduced surveys or data indicating the level of Cointreau's actual recognition. In the absence of data, the Court concludes that this factor does not weigh for or against a finding of famousness. Lack of data, however, is not fatal to Cointreau's claim to famousness. *See* 15 U.S.C. § 1125(c)(2)(B) (stating that court "*may* consider all relevant factors," including those listed

(emphasis added)); *see also Dan-Foam A/S v. Brand Named Beds, LLC*, 500 F. Supp. 2d 296, 324 n.216 (S.D.N.Y. 2007) (finding that reasonable juror could find mark famous even absent consumer surveys).

Fourth, As outlined above, the Cointreau Marks are all registered, and the Cointreau name mark was first registered in 1935. *See supra* section I. This factor supports a finding of famousness.

Three of the four factors set out in § 1125(c) thus suggest that Cointreau Corp. will succeed in proving that the Cointreau Name Mark is famous; the fourth factor carries no weight for the purposes of this motion. On balance, then, the Court concludes that Cointreau Corp. is likely to successfully prove that the Cointreau Name Marks is famous under the FTDA.[3]

---

[3] This conclusion is in line with the holdings of most other courts across the country in similar cases. Not surprisingly, courts have often found that extremely well-recognized marks are famous. *E.g.*, *Visa Int'l Serv. Ass'n v. JSL Corp.*, 590 F. Supp. 2d 1306, 1315-16 (D. Nev. 2008), *aff'd*, 610 F.3d 1088 (9th Cir. 2010) (finding Visa famous under FTDA), *Nike, Inc. v. Nikepal Int'l, Inc.*, No. 2:05-CV-1468-GEB-JFM, 2007 WL 2782030, at *5-6 (E.D. Cal. Sept. 18, 2007) (same for Nike mark). Courts have also, however, been willing to extend the designation of "famous" to less renowned – but still "widely recognized" – marks. *See, e.g.*, *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 321-22 (S.D.N.Y. 2010) (granting preliminary injunction and finding "NYC Triathlon" mark likely to be proved famous on merits); *Dallas Cowboys Football Club, Ltd. v. Am.'s Team Props., Inc.*, 616 F. Supp. 2d 622, 643 (N.D. Tex. 2009) (holding "America's Team" mark to be famous and issuing permanent injunction against diluting mark); *Dan-Foam A/S v. Brand Named Beds, LLC*, 500 F. Supp. 2d 296, 323-24 (S.D.N.Y. 2007) (finding "Tempur-Pedic" mark famous for purposes of summary judgment).

In contrast, the majority of marks found to be nonfamous are associated with products that have significantly lower levels of recognition and sales than Cointreau. *E.g.*, *Water Pik, Inc. v. Med-Sys., Inc.*, 848 F. Supp. 2d 1262, 1282-83 (D. Colo. 2012) (finding "SinuCleanse" mark for sinus irrigation product not famous); *Planet Coffee Roasters, Inc. v. Dam*, No. SACV 09-00571-MLG, 2009 WL 2486457, at *3 (C.D. Cal. Aug. 12, 2009)

*(b) Distinctiveness*.  A mark may be distinctive either inherently or through acquired secondary meaning.  An inherently distinctive mark's "intrinsic nature serves to identify a particular source," whereas a mark with acquired distinctiveness "has developed secondary meaning, which occurs when, in the minds of the public, the primary significance of [the] mark is to identify the source of the product rather than the product itself." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 237 (5th Cir. 2010) (quoting *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210-11(2000)) (internal quotation marks omitted). "[C]ourts have held that 'federal registration of a mark, including a surname, creates a presumption that the mark is distinctive.'" *Equibrand Corp. v. Reinsman Equestrian Prods., Inc.*, No. 3:07-CV-0536-P, 2007 WL 1461393, at *4 (N.D. Tex. May 17, 2007) (Solis, J.) (quoting *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 876 (9th Cir. 1999)) (citing cases). Current registration of a mark is "evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." *E. & J. Gallo Winery v. Spider*

_____

(same for coffee roaster's "Planet Coffee" mark); *Hodgdon Powder Co., Inc. v. Alliant Techsystems, Inc.*, 497 F. Supp. 2d 1221, 1232-33 (D. Kan. 2007) (same for "Clays" gunpowder marks).  In at least two cases, however, courts have determined that marks with at least moderate fame were insufficiently famous for protection under the FTDA. *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 703 F. Supp. 2d 671, 697-700 (W.D. Ky. 2010), *aff'd*, 679 F.3d 410 (6th Cir. 2012) (finding plaintiff's red dripping wax seal not famous); *Bd. of Regents, Univ. of Tex. Sys. ex rel. Univ. of Tex. at Austin v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 662 (W.D. Tex. 2008) (same for plaintiff's longhorn silhouette logo).  These latter cases, however, are distinguishable in that they both involved trade dress or logos rather than registered product names, as does this case.  Moreover, the advertising, media, and sales evidence provided by Cointreau Corp. demonstrate the nationwide, and indeed worldwide, reach of Cointreau and the Cointreau Name Mark.

*Webs Ltd.*, 129 F. Supp. 2d 1033, 1038 (S.D. Tex. 2001), *aff'd*, 286 F.3d 270 (5th Cir. 2002) (quoting 15 U.S.C. § 1115(b)).

The Cointreau Name Mark was registered in 1935, is valid and incontestable, and is "in full force and effect." Babkow Aff. ¶ 12. This valid registration creates a presumption of distinctiveness. Although "Cointreau" is a surname, the advertising and media materials provided by Cointreau Corp. suggest that the public likely identifies the word "Cointreau" primarily with the orange liqueur of that name. The name has thus developed a secondary meaning and acquired distinctiveness. Moreover, Defendants offer no evidence to overcome the presumption that this mark is distinctive. The Court accordingly finds that Cointreau Corp. is likely to succeed on the merits of its contention that the Cointreau Name Mark is distinctive.

***3.  Defendants Likely Commenced Using Controy in a Manner that Dilutes the Cointreau Name Mark When They Imported Controy into the United States. –*** The second element of a FDTA violation is that the defendant commenced using a mark in a manner that dilutes the famous mark. *Nat'l Bus. Forms*, 671 F.3d at 536. Moreover, by the terms of the FTDA, the defendant's use of the mark must be "in commerce." 15 U.S.C. § 1125(c). As Defendants' own evidence shows, the distribution agreement between La Madrileña and Pura Vida came into effect at the beginning of 2012, and since then Pura Vida has been "distributing, marketing, and promoting" Controy in the United States. Skloss Aff. ¶¶ 4-5. As explained below, Cointreau Corp. is likely to prove that the Defendants' use of the Controy name mark in the United States will dilutes the Cointreau Marks. *See infra* section

II.A.5.  Based on these facts, when Defendants imported Controy into the United States, they commenced using the Controy name mark, in commerce, in a way that dilutes the Cointreau Name Marks.  Cointreau Corp. is thus likely to succeed in proving this element of its claim on the merits.

> ### *4.  The Similarity of the Cointreau Name Mark and the Controy Name Mark Likely Gives Rise to an Association Between the Marks.* – The third element of a FDTA violation requires that the defendant's mark be so similar to the plaintiff's mark that the two appear to be related.  *Nat'l Bus. Forms*, 671 F.3d at 536.  In determining degree of similarity, courts "compar[e] the marks' appearance, sound, and meaning."  *Cottonwood Fin. Ltd. v. Cash Store Fin. Services, Inc.*, 778 F. Supp. 2d 726, 750 (N.D. Tex. 2011) (quoting *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 201 (5th Cir. 1998)).[4]  "The relevant inquiry is whether, under the circumstances of the use, the marks are sufficiently similar that prospective purchasers are likely to believe that the two users are somehow associated."  *Elvis Presley*, 141 F.3d at 201 (quoting RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 21 cmt. c) (internal quotation marks omitted).  Degree of similarity depends on the marks' "total effect" or "overall impression."  *Sun Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Ass'n*, 651 F.2d 311, 317-18 (5th Cir. 1981) (quoting *Amstar Corp. v. Domino's Pizza, Inc.*, 615

---

[4]In *Cottonwood*, this Court analyzed a dilution claim under the Texas anti-dilution statute, TEX. BUS. & COM. CODE § 16.29 (repealed Sept. 1, 2012).  778 F. Supp. 2d at 744-60.  In so doing, however, the Court construed the Texas statute consistently with the FTDA. *Id.* at 745.  Accordingly, the Court's analysis of the Texas statute largely applies to the FTDA as well.

F.2d 252, 260 (5th Cir. 1980); *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 502

(5th Cir. 1979)).

 In this case, the names of the products are alike both visually and aurally.  They share

more than half their letters in common, and all of the consonants in the word "Cointreau"

appear, in the same order, in "Controy."  The fact that many consumers may pronounce the

first syllables of the words differently does not undermine the names' similarity, particularly

as "there is no correct pronunciation of a trademark."  *In re Viterra Inc.*, 671 F.3d 1358, 1367

(Fed. Cir. 2012) (citing  *Interlego AG v. Abrams/Gentile Entm't Inc.*, 63 U.S.P.Q.2d 1862,

1863 (T.T.A.B. 2002)).  The names' likeness is even more striking given that both are orange

liqueurs and that no other orange liqueur identified by the parties has a name close in spelling

or pronunciation to Cointreau or Controy.  The product names' aural similarity is particularly

salient given that a consumer who orders Cointreau by name only in a bar or restaurant may

not have the opportunity to scrutinize the bottle and label of the liqueur he is ultimately

served.  A bartender or waiter may thus serve Controy in error when a customer orders

Cointreau.  *Cf. Jules Berman & Assocs. v. Consol. Distilled Prods., Inc.*, 202 U.S.P.Q. 67,

70-71 (T.T.A.B. 1979) (finding similarity of names of coffee liqueurs Kahlua and Chula

"exacerbated to the extent that there is a viable likelihood of confusion and/or mistake arising

in crowded bars and restaurants.").  Cointreau Corp. is thus likely to prove that the names

"Cointreau" and "Controy are sufficiently similar to give rise to an association between the

two products.

### 5. *Controy Is Likely to Cause Dilution by Blurring to the Cointreau Name Mark.*

– Finally, to state a FTDA dilution claim, a plaintiff must show that the association between the marks is likely to blur or tarnish the plaintiff's mark. *Nat'l Bus. Forms*, 671 F.3d at 536. Here, the question is whether the Controy name blurs the Cointreau Name Mark. The FTDA provides that a court analyzing potential blurring may consider all relevant factors, including the following nonexhaustive list of six:

> (i) The degree of similarity between the mark or trade name and the famous mark. (ii) The degree of inherent or acquired distinctiveness of the famous mark. (iii) The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark. (iv) The degree of recognition of the famous mark. (v) Whether the user of the mark or trade name intended to create an association with the famous mark. (vi) Any actual association between the mark or trade name and the famous mark.

15 U.S.C. § 1125(c)(2)(B). Analysis of these factors reveals that Cointreau Corp. is likely to show dilution by blurring.

    *(a) Degree of similarity between the marks.* As discussed above, the Cointreau Name Mark and the Controy Name Mark are quite similar. *See supra,* section II.A.4. This factor thus weighs in favor of Cointreau Corp.'s ultimately proving a likelihood of dilution.

    *(b) The Cointreau Name Mark's degree of inherent or acquired distinctiveness.* In analyzing this factor, a court must determine how distinctive or "unique" the marks are to the public. *Cottonwood*, 778 F. Supp. 2d at 751 (quoting *Citigroup, Inc. v. Capital City Bank Grp., Inc.*, 94 U.S.P.Q.2d 1645, 1668 (T.T.A.B. 2010)). Relevant considerations include "the inherent inventiveness of the mark itself and the amount of third-party usage of the term as a mark, especially in the market in question." *Id.* (citing *Star Indus., Inc. v.*

*Bacardi & Co. Ltd.*, 412 F.3d 373, 385 (2d Cir. 2005)).  "In essence, then, this factor also assesses a mark's strength or weakness," with greater strength and distinctiveness corresponding to a greater interest to be protected.  *Id.* (citing *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 217 (2d Cir. 1999)).

While "Cointreau" is a surname, Cointreau Corp. is likely to successfully prove that the public associates the word with Cointreau orange liqueur.  The unsolicited articles and the spreadsheets detailing the Cointreau advertising material are proof of this likelihood. Babkow Aff., Exx. E-F.  These sources demonstrate that the Cointreau Name Mark is strong and that third parties likely recognize the Cointreau name as indicating a single thing: Cointreau brand orange liqueur.  Moreover, "Defendants do not dispute the strength of [Cointreau Corp.'s] mark."  Defs.' Resp. 9.  The Court thus finds that this factor favors Cointreau Corp's ability to successfully prove a likelihood of dilution.

(c)  ***Extent of Cointreau Corp.'s substantially exclusive use of the mark.***  As this Court has previously stated,

> The concept of substantially exclusive use originates from the acquired distinctiveness provisions of 15 U.S.C. § 1052(f), which considers "proof of substantially exclusive and continuous use" of a mark "in commerce for the five years before the date on which the claim of distinctiveness is made" to constitute "prima facie evidence" of distinctiveness.  Requiring only "substantially" exclusive use "makes allowance for use by others which may be inconsequential or infringing and which therefore does not necessarily invalidate the applicant's claim."

*Cottonwood*, 778 2d F. Supp. 2d at 752 (quoting *L.D. Kichler Co. v. Davoil, Inc.*, 192 F.3d 1349, 1352 (Fed. Cir. 1999)).

Cointreau Corp. and its corporate parent have been marketing and selling Cointreau in the United States since at least 1885 and have in the past five years spent at least $7 million annually promoting their orange liqueur in this country. Babkow Aff. ¶ 27. Defendants have introduced no evidence that this use has not been exclusive. Moreover, Cointreau Corp. and its corporate parents have "vigorously protected" its trademarks by seeking registrations in the United States and around the world and by "vigorously policing its rights in those registrations." Babkow Aff. ¶ 7. These actions – including Cointreau Corp.'s filing of this suit in short order after Defendants began importing Controy into this country – demonstrate an interest in maintaining exclusive use of the Cointreau Marks and suggest that their use was in fact likely exclusive. The Court accordingly finds that Cointreau Corp. is likely to prove that its use of the Cointreau Name Mark has been substantially exclusive and continuous. This factor thus increases the likelihood that Cointreau Corp. will ultimately prove a likelihood of dilution.

*(d)* ***Distinctive mark's degree of recognition.*** This factor calls on a court to "apply a sliding scale to determine the extent of [a mark's] protection (i.e., the more famous the mark, the more likely there will be an association between the famous mark and the defendant's mark)." *Citigroup, Inc. v. Capital City Bank Grp., Inc.*, 94 U.S.P.Q.2d 1645, 1668 (T.T.A.B.2010). "Given the close relationship between distinctiveness and fame, the Court looks to factors similar to those used in analyzing a mark's claim to fame under federal law." *Cottonwood*, 778 F. Supp. 2d at 753.

As discussed above, articles and advertisements in a great many sources have featured the Cointreau Name Mark. Babkow Aff. Exs. E-F. Moreover, Cointreau is the second most popular orange liqueur by volume of sales in the United States, Babkow Aff. ¶ 13, and has earned its seller more than $37 million in sales in this country each year for the past five years, Babkow Aff. ¶ 28. The Court accordingly finds that the Cointreau Marks are famous and that this factor, too, weighs in favor of Cointreau Corp. successfully proving a likelihood of dilution.

    *(e) Defendants' intent to create association.* This Court has previously observed that,

> [i]n some situations, a showing that the defendant intended to use the allegedly infringing mark with knowledge of the predecessor's mark may give rise to a presumption that the defendant intended to cause public confusion. This predatory intent, however, must involve more than mere knowledge of the senior mark – it requires a showing that the junior user adopted its mark hoping to benefit commercially from association with the senior mark. If present, predatory intent provides strong evidence of the likelihood of blurring.

*Cottonwood*, 778 2d F. Supp. 2d at 754 (quoting *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 486 (5th Cir. 2004); *Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1037 (2d Cir. 1989)) (internal quotations, citations, and alterations omitted).

    Cointreau Corp. asserts that Defendants hoped to benefit commercially from association with the Cointreau Marks. Regarding this question of intent, Defendants offer evidence from a case before a Mexican tribunal in which Cointreau S.A. de R.L. brought against La Madrileña claims similar to those Cointreau Corp. asserts against Defendants in this litigation. *See* Fernandez Aff. in Supp. of Defs.' Resp., Ex. 7 [12-3]. The Mexican court

ORDER – PAGE 15

found in favor of La Madrileña, apparently because Cointreau S.A. de R.L.'s claims were time-barred. *Id.* at 332-33. Defendants maintain that certain of the Mexican court's findings are relevant to the question of Defendants' intent to trade off Cointreau's name and possible confusion arising from the Cointreau-Controy similarity. As a general matter, "when trade-mark rights within the United States are being litigated in an American court, the decisions of foreign courts concerning the respective trade-mark rights of the parties are irrelevant and inadmissible." *FUJI Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 599 (5th Cir. 1985) (quoting *Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir. 1956)). In cases, however, in which a "foreign decision is competent evidence of a relevant fact," the decision is admissible as to that fact. *Otokoyama Co. Ltd. v. Wine of Japan Imp., Inc.*, 175 F.3d 266, 273 (2d Cir. 1999) (admitting foreign decision to show meaning of Japanese word and to support related assertion that Japanese word was not fanciful or arbitrary). The Mexican case is not admissible here, however, because it would not provide evidence of a relevant fact. Instead, the portion of the case Defendants ask this Court to adopt is a recitation of facts regarding trademark registration in Mexico. Moreover, even if those facts were relevant to the Mexican court's conclusions with respect to La Madrileña's intent, such conclusions would be application of certain facts to Mexican legal standards, not facts themselves. The case is thus irrelevant and immaterial as to the point at issue, and the Court declines to consider it.

Though the Mexican case is inapplicable, Cointreau Corp. has not advanced any direct evidence that Controy's makers intended to benefit from the goodwill associated with

Cointreau.  Similarity of brand name and trade dress, while suggestive of predatory intent, does not by itself amount to such a showing at this stage in the litigation.  The Court thus concludes, based on the record as it presently stands, that there is insufficient evidence to prove that Defendants intended to create an association with the Cointreau Marks.  This factor thus ultimately weighs against a finding of likelihood of dilution, but it does not "relieve [Defendants] of liability if other factors support a finding of blurring."  *Mead*, 875 F. 2d at 1037.

(f) *Actual association between the marks.*  Because Cointreau Corp. filed this action contemporaneously with the entry of Controy into the United States market, no evidence of actual association exists.  "As with a lack of actual confusion in likelihood of confusion analysis, however, this does not make association unlikely."  *Cottonwood*, 778 2d F. Supp. 2d at 755.  On balance, then, this factor does not affect the likelihood that Cointreau Corp. will succeed on the merits of its claim of likely dilution.

4.   *Conclusion Regarding Likelihood of Dilution.* – Cointreau Corp. has demonstrated a substantial likelihood of success on the merits of its dilution claim under the FTDA.  Because they are registered trademarks, the Cointreau Marks are distinctive.  Of the six factors in the trademark-dilution test this Court previously adopted, four weigh in favor of a finding of dilution.  The Court thus concludes that Cointreau Corp. will likely succeed on the merits of its claim that the Controy name mark impermissibly dilutes the Cointreau Name Mark.

### B. Cointreau Has Demonstrated a Substantial Threat that It Will Suffer Irreparable Injury Absent a Preliminary Injunction

"[A]n injury is irreparable only if it cannot be undone through monetary remedies." *Enter. Intl, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472-73 (5th Cir. 1985) (quoting *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981)) (internal quotation marks omitted). "Because dilution gradually 'whittles away' a mark's uniqueness and distinctive selling power, its harm accrues over time. The longer the defendant uses the diluting mark, the more time the public has to associate the plaintiff's mark with another's goods or services." *Cottonwood*, 778 F. Supp. 2d at 760 (citing *Visa Int'l Serv. Ass'n v. JSL Corp.*, 610 F.3d 1088, 1090-91 (9th Cir. 2010)). Such harm is permanent and cannot be remedied by cash payments. *Id.* Cointreau, using the Cointreau Name Mark, has been accumulating goodwill and selling power in the United States since at least 1885. By using marks similar to the Cointreau Marks, Controy would whittle away that goodwill and selling power. *See also Am. Registry of Radiologic Technologists v. McClellan*, No. 3:00-CV-2577-K, 2004 WL 377054, at *5 (N.D. Tex. Jan. 13, 2004) (Kinkeade, J.), *aff'd*, 155 F. App'x 744 (5th Cir. 2005) (finding irreparable harm "[a]s the direct and proximate result of . . . dilution" of plaintiff's mark); *Polo Ralph Lauren L.P. v. Schuman*, No. CIV.A. H97-1855, 1998 WL 110059, at *5 (S.D. Tex. Feb. 9, 1998) (finding plaintiff established irreparable harm due to dilution).

Moreover, "[a]n injury is also irreparable when compensatory damages are extremely difficult to calculate." *Quantum Fitness Corp. v. Quantum LifeStyle Centers, L.L.C.*, 83 F. Supp. 2d 810, 831 (S.D. Tex. 1999) (citing cases); *see also Lakedreams v. Taylor*, 932 F.2d

ORDER – PAGE 18

1103, 1109 (5th Cir. 1991) ("[W]hen economic rights are especially difficult to calculate, a finding of irreparable harm may be appropriate.") (citing cases). In this case, damage to the goodwill and selling power associated with the Cointreau Marks would be difficult if not impossible to calculate in monetary terms. Cointreau Corp. has thus shown a substantial threat that it will suffer irreparable injury in the absence of an injunction.

### C. *Injury to Cointreau Corp. Outweighs Any Potential Injury to Defendants*

Cointreau has been on sale in the United States for over 125 years. Controy entered the market only recently. As discussed above, the continued sale of Controy would likely dilute the Cointreau Name Mark's distinctiveness, causing irreparable injury to Cointreau's goodwill and selling power, which have been accumulating since 1885. Defendants assert that an injunction would cause them to lose "tens of millions of dollars." Skloss Aff.¶ 9. They further claim that the lawsuit itself has restricted their access to credit and caused distributors to be unwilling to distribute Controy. *Id.* These alleged damages, however, all spring from Defendants' decision to import a product into the United States, Controy, that is likely to be found to dilute the Cointreau Name Mark and thus violate federal law. This injury does not carry weight in the Court's analysis. *See Lakedreams*, 932 F.2d at 1110 n.12 (noting First Circuit's view that "[w]here the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense 'merits little equitable consideration.'" *Concrete Machinery Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612 (1st Cir. 1988) (quoting *Helene Curtis Indus. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1333 (7th Cir. 1977))); *Equibrand*, 2007 WL 1461393,

ORDER – PAGE 19

at *15 (  "[T]he fact that Defendants will suffer lost profits from not being able to market likely infringing products is not a factor that tips the scales in favor of Defendants.").  The Court accordingly finds that injury to Cointreau Corp. in the absence of a preliminary injunction would outweigh injury to Defendants should an injunction issue.

### D.  A Preliminary Injunction Serves the Public Interest

A preliminarily injunction preventing Defendants from selling Controy will serve the public interest in two ways.  First, it will help prevent the public from confusing Controy with Cointreau.  "[T]he public has an interest in preventing confusion about the origin of the products that it buys."  *Lakedreams*, 932 F.2d at 1110.  Second, it will ensure the enforcement of federal law.  *See, e.g., Equibrand*, 2007 WL 1461393, at *16 (enforcement of laws serves public interest).

### E.  Cointreau Corp. Must Post a $1 Million Bond

"[A] court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  A court "may elect to require no security at all."  *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (quoting *Corrigan Dispatch Co. v. Casa Guzman*, 569 F.2d 300, 303 (5th Cir. 1978)).  The Court preliminarily enjoins the sale of Controy only in the United States. Defendants may continue to manufacture and sell Controy in Mexico.  Nevertheless, if Defendants prevail at trial, they will have suffered damages and spent money on this lawsuit.

The Court accordingly requires Cointreau Corp. to give security in the amount of $1,000,000 upon the issuance of this preliminary injunction.

### CONCLUSION

Cointreau Corp. has satisfied the requirements for issuance of a preliminary injunction. The Cointreau Name Mark is famous and distinctive, and Cointreau Corp. is likely to succeed on the merits of its dilution claim under the FTDA. Moreover, Cointreau Corp. will likely suffer irreparable injury in the absence of a preliminary injunction, the potential injury to Cointreau Corp. in the absence of injunctive relief outweighs the potential injury to Defendants should an injunction issue, and an injunction would not disserve the public interest. Because Cointreau Corp. is likely to succeed on the merits of its federal dilution claim, and because this likely success results in a preliminary injunction, the Court need not consider the remainder of its claims here. The Court accordingly grants Cointreau Corp.'s motion and enjoins Defendants, together with their agents, employees, officers, directors, attorneys, and all others acting in active concert with them, as follows:

(1) Defendants may not import into or sell in the United States any orange liqueur sold under the name "Controy."

Cointreau Corp. must file with the Court an undertaking with surety, or cash in lieu of a bond, in the sum of $1,000,000 for payment of such costs and damages as may be incurred or suffered by any party who may be found to be wrongfully restrained or enjoined, such security to be approved by the Clerk of the Court. This Preliminary Injunction shall not take effect until the Clerk certifies that Cointreau Corp. has provided such security.

Signed October 2, 2012.


_____
David C. Godbey
United States District Judge