UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COINTREAU CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-02257-N |
| | § | |
| PURA VIDA TEQUILA COMPANY, LLC, | § | |
| And LA MADRILEÑA S.A. DE C.V., | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' REPLY TO PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR CLARIFICATION

Defendants Pura Vida Tequila Company, LLC (**Pura Vida**) and La Madrileña S.A. de C.V. (**La Madrileña**) respectfully reply to Plaintiff's Brief in Opposition to Defendants' Motion for Clarification of the Court's October 2, 2012 Order Granting Plaintiff's Motion for a Preliminary Injunction (**Plaintiff's Opposition**), as follows:

**I.**     **The Court Clearly Has Subject Matter Jurisdiction to Clarify the Scope of its Order**

Plaintiff's contention that Defendants' request for clarification does not present a justiciable "case or controversy" under the Declaratory Judgment Act, and should be construed as a request for an advisory opinion, (Pl.'s Opp., Doc. 39, at 2, 5), is without merit. First, the Motion does not seek a declaratory judgment – it seeks clarification of the *scope* of the Order, and Plaintiff's representations concerning the Order's scope demonstrate the need for clarification. While the Order prohibits importation and sale "under the name 'Controy[,]'" (Doc. 33, at 21), Plaintiff contends that it forbids Defendants from marketing and selling any product "bearing the name CONTROY", (*id.* at 1), and that the mere appearance of "CONTROY" in the proposed labels "is in direct violation" of the Order. (*Id.* at 7.) Thus, while

1

Defendants are "prepared to re-name, label, market, import and sell" the product under any of the proposed new names and labels, and to proceed immediately, (Doc 37 at 5, Doc. 38-1, ¶5), clarification of their right to do so under the terms of the Order is necessary. Plaintiff's own briefing, stating the implicit threat of action against Defendants for violating the Order (presumably for contempt) should Defendants proceed as requested, clearly shows an existing "case or controversy."

Second, it is common practice in trademark cases to propose variations to the challenged marks, including to avoid the alleged likelihood of confusion. *See, e.g., Edge Wireless, LLC v. U.S. Cellular Corp.*, No. Civ. 03-1362-AA, 2004 WL 1661992, at *19 (D. Oregon July 23, 2004) ("Defendant offered several options that are pertinent … such as darkening the U.S. Cellular house mark … and displaying the … house mark one and one-half times larger than the easyedge[sm] mark…. these alternatives are quite reasonable").

Third, none of Plaintiff's cited cases involves a request for clarification.[1] Moreover, even under the case or controversy standard for declaratory judgment actions, a case or controversy exists in the trademark context "'where a party has engaged in a course of conduct evidencing a 'definite intent and apparent ability to commence use' of the [allegedly infringing] mark[,]'" *Young*, 612 F.Supp.2d at 839 (citation omitted), and under the Supreme Court's *lowered threshold* for showing an actual controversy in such cases, "a plaintiff who is effectively coerced by another party into eliminating a threat of suit may nonetheless bring a declaratory judgment suit." *Id.* (citing *MedImmune*, 549 U.S. at 126-27.) Plaintiff's threat is clear. There is no

---

[1] *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) (patent licensee's action for declaratory judgment); *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745 (5th Cir. 2009) (assessing standing in declaratory judgment suit); *Young v. Vannerson*, 612 F.Supp.2d 829, 837 (S.D. Tex. 2009) (suit for permanent injunction and declaration of exclusive right of use); *Val-Com Acquisitions Trust v. SunTrust Mortg. Co.*, 434 F.Appx. 391 (5th Cir. 2011) (appeal of dismissal of Declaratory Judgment Act claims).

genuine question of an existing "case or controversy" between the parties regarding application of the Order to the intended re-naming and re-labeling of Controy for immediate sale.

**II.    The Proposed Labels Will Not Dilute the Cointreau Name Mark**

   **A. The Mere Inclusion of the Name "CONTROY" in the Proposed Labels Does Not Dilute Plaintiff's COINTREAU Name Mark**

Plaintiff's argument that the mere appearance of CONTROY in the proposed labels creates a "likelihood of dilution", (Pl.'s Opp., at 7), misstates well-settled law.

   *1.  CONTROY is Not the "Dominant Portion" of the Proposed Names and Labels, and the Argument that Consumers Are Likely to Refer to Defendants' Re-Named Product Simply as CONTROY is Unsupported and Contrary to the Evidence, Labels and Law*

Plaintiff erroneously contends that CONTROY is the "dominant word" in the proposed labels, and that the terms "PURA VIDA", "DE MEXICO" or "MEXICAN" are irrelevant.

The "dominant portion" of a mark is "that which is most noticeable and most unavoidably attracts the public's attention." *Packerware Corp. v. Corning Consumer Prods. Co.*, 895 F.Supp. 1438, 1449 (D. Kan. 1995) (citation omitted); *see St. Croix of Park Falls Ltd. v. Maurice Sporting Goods Inc.*, No. 00 C1394, 2000 WL 1263463, *3 (N.D. Ill. July 31, 2000) (plaintiff's name and logo were dominant and alleged infringing term "elite" was subordinated); *Universal Money Centers, Inc. v. American Tel. & Telegraph Co.*, No. 90-2201-0, 1990 WL 136826, *5 (D. Kan. 1990) (citation omitted). The courts "must analyze each feature of a mark to determine its significance to the mark as a whole and to ascertain the dominant feature ...." 895 F.Supp. at 1449 (citation omitted).[2] Also, it is well settled that the "use of a similar word in

---

[2] The courts -- while giving greater weight to a dominant feature -- may not dissect marks to examine and compare their component parts; the marks must be considered and compared in their entirety. *See, e.g., SG Services Inc. v. God's Girls Inc.*, No. CV 06-989 AHM (CTx), 2007 WL 2315437, *4 (C.D. Cal. May 9, 2007) (citing J. McCarthy, Trademarks and Unfair Competition § 23:41); *Yard-Man, Inc. v. Savage Arms Corp.*, 220 F.2d 782, 863-64 (C.C.P.A. 1955) ("Savage Yard Chief" as used on lawn mowers differed sufficiently in sound and appearance from plaintiff's "Yard-Man" to obviate likelihood of confusion; also noting differences in appearance between the marks).

different trade-marks does not establish that the word is a dominant feature thereof[,]" *Peter Pan Foundations v. Beau-Bra Foundations*, 125 F.Supp. 637, 639-40 (S.D.N.Y. 1954), and that the use of a prominent house mark "may *negate the likelihood of confusion*." *Edge Wireless, LLC*, 2004 WL 1661992, *12 (no likelihood of confusion when U.S. Cellular house mark and star logo displayed prominently) (citing multiple cases) (emphasis added).

In *Packerware*, the plaintiff sought to enjoin defendant's use of "Casual Elegance" with its new cookware product line, contending that such use infringed plaintiff's "Casual Elegance" mark used for closely related products. 895 F.Supp. at 1441, 1446. The terms were identical, but the "dominant portion of each mark [was] different." *Id.* at 1449. The word "Casual" was the dominant portion of the plaintiff's mark, as approximately *three times the size* of "Elegance," whereas the defendant's label showed both words the same size reflecting no word was dominant. *Id.* Similarly, in *Universal Money Centers* both marks included the word "universal," but the dominant portion of each mark was different: "UNIVERSAL" for plaintiff's mark, and "AT&T" for defendant's mark. 1990 WL 136826, at *5. The *Packerware* court also found that "differences in the overall design of the two products' labeling, specifically with respect to lettering styles and color schemes[,]" militated against confusion. 895 F.Supp. at 1449 (citing *W.W.W. Pharmaceutical Co. Inc. v. The Gillete Co.*, 984 F.2d 567, 573 (2d Cir. 1993) (differences in sizes, logos, typeface and package design create "dissimilar modes of presentation"); *Beatrice Foods Co. v. Neosho Valley Co-op. Creamery Ass'n*, 297 F.2d 447, 450 (10th Cir. 1961) (differences in packaging design and color rendered confusion unlikely)).[3]

Northern District cases employ a similar analysis. *See Maschinenfabrik Reinhausen*

---

[3] Neither *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221 (5th Cir. 2009) (marks shared visually striking large X), nor *Elvis Presley Enters. v. Capece*, 141 F.3d 188 (5th Cir. 1998) (defendants' mark highlighted "Elvis" portion) involved such large-font distinctions and related distinctions as at issue herein.

*GmbH v. Shanghai Huaming Power Equip. Co. Ltd.*, No. 3:06-CV-0897-L, 2006 WL 1379486, at *2 (N.D. Tex. May 19, 2006) (letter "M" dominant feature of each mark, but under "eyeball test" style of letter in defendant's designation easily distinguishable from style in plaintiff's mark; the former superimposed an "H" on the "M", and in the latter "M" was freestanding next to an "R"; considering all relevant factors, "the 'HM' design is quite different").

Further, the <u>same analysis applies when comparing marks used for alcoholic beverages</u>. In *National Distillers Prods. Co., LLC v. Refreshment Brands, Inc.*, 198 F.Supp.2d 474 (S.D. N.Y. 2002), the plaintiff alleged infringement and dilution concerning its premium "Teton Glacier" vodka, registered under "TETON GLACIER HAND CRAFTED VODKA."  The plaintiff claimed that defendant's marketing and selling a "vodka cooler" under the marks "Glacier Bay Vodka Refreshment" and "Glacier Bay Nights" infringed and diluted the mark. 198 F.Supp.2d at 479.  The court found it clear that TETON GLACIER was the "dominant feature" of the plaintiff's mark, "<u>as the font used for the words HAND CRAFTED AMERICAN VODKA is only one-quarter the size of the font used for the words TETON GLACIER[,]</u>" and hand crafted American vodka was merely descriptive. *Id.* at n. 2 (emphasis added).

> The test is whether the marks convey the same general overall impression when viewed separately, considering all the aspects of each.... It is improper to dissect fragments of the marks for this purpose.... Thus, while both marks incorporate the word "Glacier," the entire look and feel of the two marks [is] far from identical.  First, the names of the products are different.  Second, while both marks incorporate a picture of mountains, the pictures look significantly different from one another....

*Id.* at 481 (citations omitted).

The *Gruma* decision is consistent.  In *Gruma*, the Fifth Circuit focused on the identical term "MISSION" as the dominant feature of both marks because "BURRITO" was merely descriptive, and, considering the similarities, found that both used the word "in all caps and both use an image that clearly represents the tower of a mission style Spanish church."  2012 WL

5

4842036, at *4.  Both employed a mission-style tower "associated with Mexico and South Texas to draw an association with the name MISSION and the Mexican food each party sells."  *Id.*

Here, any comparison of the marks conveys an entirely different perception.  Under the "eyeball test" the variants "**PURA VIDA** CONTROY DE MEXICO", "**PURA VIDA** CONTROY" and "**PURA VIDA CONTROY** DE MEXICO", for example, render PURA VIDA the dominant feature in size and styling, and all labels emphasize the Pura Vida name, *consistent with other popular Pura Vida beverages.*  (*See* Doc. 38-1, ¶¶ 3, 5-9, and Exhs. 1-3 thereto; Doc. 12-10, ¶¶ 2, 3, 13.)  Analyzing each feature to determine "significance to the mark as a whole" and overall design of the labeling, the proposed names and labels -- distinct as to font size, colors, typeface, and styling -- are significantly different from COINTREAU.  (*See id.*; compare Doc. 12, App. at 181.)  And unlike in *Gruma*, Defendants' proposed names/labels emphasis on the Mexican product is *distinct* from the French Cointreau.

Additionally, Plaintiff's argument that "it is expected that the product would be referred to as CONTROY", and that Defendants have not submitted evidence that the product will be marketed as anything other than CONTROY, (Pl.'s Opp., at 11, 13), is contrary to the evidence and the proposed names and labels themselves.  ("Pura Vida is prepared to re-name, label, market … Controy Orange Liqueur … under any of the following names…."  Doc. 38-1, ¶5.)

### 2.  *The Dominant Display and Use of "Pura Vida" Negates Any Likelihood of Confusion*

Further to the above discussion, Plaintiff's argument that the addition of Pura Vida's name or country of origin does not reduce the likelihood of dilution, (Pl.'s Opp., at 11), is not well founded.  Numerous cases recognize that the prominent use of a house mark or name may negate a likelihood of confusion.  *See Universal Money Centers, Inc.*, 22 F.3d at 1531 (disputed mark as whole not confusingly similar "especially in light of the distinctive AT&T house mark

prominently displayed on front of AT&T's card"); *Edge Wireless, LLC*, 2004 WL 1661992, \*12 (citations omitted); *EA Engineering, Science, and Tech., Inc. v. Environmental Audit, Inc.*, 703 F.Supp. 853, 857 (C.D. Cal. 1989) (while the marks shared letters "EA" in common, addition of "I" to defendant's "EA" plus use of its corporate name sufficiently distinguished the marks).[4] Consistent with the above discussion of dominant features, the re-naming and labeling as, e.g., "**PURA VIDA CONTROY**", "**PURA VIDA** CONTROY DE MEXICO" or "**PURA VIDA CONTROY** DE MEXICO", prominently features the established Pura Vida name and brand, as a Pura Vida Mexican liqueur, thereby distinguishing the product and militating against confusion.

### B. The Disclaimer is Proposed in the Interest of Further Avoiding Any Perceived Likelihood of Confusion, Consistent with This Court's Prior Rulings and Case Law

As indicated in the Motion and Affidavit of Stewart Skloss, while the law supports the absence of a likelihood of confusion under the proposed labels, Defendants propose a disclaimer in the interest of *further* avoiding any perceived confusion, and in light of this Court's approval of a disclaimer in *Cottonwood Fin'l Ltd. v. Cash Store Fin'l Servs., Inc.*, 778 F.Supp.2d 726 (N.D. Tex. 2011).

As noted in *Cottonwood*, "'[c]ourts in trademark cases have a responsibility to tailor relief to the violation, a responsibility that includes consideration of disclaimers.'" *Id.* at 741

---

[4] Plaintiff's cases are easily distinguishable. In *W. E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656 (2d Cir. 1970), in which Revlon was held in contempt for procuring a stay of the injunction by fraud, Revlon's placement on the market of the infringing "Cuti-Trim" trimmer followed its unsuccessful attempt to acquire the plaintiff's business. 435 F.2d at 659-60. The patent office had twice refused to register Revlon's "Cuti-Trim" name, which the court found indicated the patent office's perception of confusion. *Id.* at 659, 662. While Revlon did rely on its use of its famous name together with Cuti-Trim, there was no issue of "dominant feature" or differing sizes or prominence of the marks, as Revlon apparently simply added its name as a "tag along" to the Cuti-Trim name. *See id.* Similarly, the *Miles Shoes, Inc. v. R. H. Macy & Co.*, 199 F.2d 602 (2d Cir. 1952) case was filed following a denial of registration by the Commissioner of Patents. 199 F.2d at 602. The court accorded "substantial weight" to the Commissioner of Patent's decision. There was no issue of dominant features or prominence as, like in *Revlon*, the plaintiff apparently simply added the alleged infringing name without other distinction. *See id.*

7

(quoting *Westchester Media, LLC v. PRL USA Holdings, Inc.*, 214 F.3d 658, 674 (5th Cir. 2000)).  In this regard, consumers familiar with the particular market segment are less likely to be confused by similar marks, and the level of consumer sophistication determines the scope of injunctive relief.  *Id.* at 758 (quoting *Westchester Media*).  In *Cottonwood*, this Court determined that emphasizing the "Financial Services" component of CSFS's trade name would reduce the possibility of the general public associating its marks with Cottonwood's, and that a conspicuous disclaimer would "mitigate misassociation among relatively more sophisticated consumers...." *Id.* at 761.  That same reasoning applies here.  Plaintiff, as movant for the preliminary injunction, never introduced any evidence regarding the sophistication or lack of sophistication of consumers of premium orange liqueur.  Defendants, however, submitted *multiple* Internet stories, articles and blogs reflecting U.S. consumer sophistication – consumers of margaritas selecting specific orange liqueurs, including a preference for Controy, for Mexican margaritas.  (*See* Doc. 12, at App. 174, ¶¶ 6, 15, and at 182-207.)  Again, Defendants propose to import, market and sell Controy under one of the proposed new names and labels, emphasizing the Pura Vida name and brand and the liqueur's Mexican roots.  Contrary to Plaintiff's unsupported assertion that a disclaimer would have no value at a bar or restaurant, (Pl.'s Opp., at 14), consumers of such premium liqueurs view the bottle displays and, as the submitted evidence reflects, seek particular brands and makes to suit their taste.  Thus, a disclaimer (which can be included on all advertising, etc.) has value and impact, for the same reasons as recognized in *Cottonwood*.  Also, Plaintiff grounds its argument in the condition: "if the product is marketed as CONTROY...." (*Id.*)  Again, however, the Affidavit of Stewart Skloss and Motion clearly state that the product will be marketed as re-named and re-labeled, and, therefore, Plaintiff's premise is without basis.

20120190.20120190/1460115.1

III.   **Defendants Ask That The Order Be Clarified Such That It Does Not Apply To Unaffiliated Third Parties To Whom Controy Was Sold Prior To the Order**

Plaintiff asserts that the third-party distributors, "as agents of Defendants, and those acting in concert with Defendants[,]" are covered by the Order, which enjoins Defendants "together with their agents ... and all others acting in active concert with them" from importing or selling any orange liqueur under the name "Controy." (Pl.'s Opp., at 15-16; Doc. 33, at 21.) The distributors, however, are unaffiliated and wholly independent third parties in the business of distribution generally.   They are not subject to Defendants' control, and, thus, are not Defendants' agents.   An agency "'is a fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other to so act.'"   *Cardinal Health Solutions, Inc. v. Valley Baptist Med. Ctr.*, 643 F.Supp.2d 883, 887 (S.D. Tex. 2008) (citations omitted).   The principal's right to control the actions of the alleged agent is an "essential element" of the alleged agency.   *Id.* (citations omitted); *see S&I Management, Inc. v. Sungju Choi*, 331 S.W.3d 849, 853 (Tex. App. – Dallas 2011, no pet.) (vicarious liability for actions of agent acting within scope of agency arises on basis of principal's right to control the means and methods of agent's work) (citing *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998)).   Here, the Skloss Affidavit states that the third-party distributors are making demands that Pura Vida buy back previously sold shipments of Controy.   (Doc. 38, Skloss Aff., ¶ 4, at 4.) Clearly, the distributors are not subject to Defendants' control.   Defendants also submit that such independent third parties' distribution of purchased products, together with the products of multiple other companies, does not render such independent parties "in active concert" with Defendants.

WHEREFORE, and for the reasons set out in Defendants' Motion for Clarification of Order Granting Plaintiff's Motion for Preliminary Injunction, Defendants respectfully request

that this Court grant the Motion.

Respectfully Submitted,

HIRSCH & WESTHEIMER, P.C.

By:   /s/ Rupert F. Barron
      Eric Lipper
      State Bar No. 12399000
      Fed. ID No. 11442
      Attorney-in-Charge
      Rupert F. Barron
      State Bar No. 24030094
      Fed. ID No. 602405
      700 Louisiana, 25th Floor
      Houston, Texas  77002

OF COUNSEL:
      TEL:  (713) 223-5181
      DIRECT:  (713) 220-9172

Morton A. Rudberg
      FAX:  (713) 223-9319
State Bar No.: 17368000
      EMAIL: rbarron@hirschwest.com
Turley Law Center
6440 N. Central Expressway, Suite 516
Dallas, Texas 75206
      ATTORNEYS FOR DEFENDANTS
TEL: (214) 696-2900
      PURA VIDA TEQUILA COMPANY, LLC, and
FAX: (214) 696-2984
      LA MADRILEÑA S.A. DE C.V.

**LOCAL COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of December, 2012, the foregoing Reply was served via Notice of Electronic Filing and as indicated below:

Stephen G. Gleboff
Megan K. Dredla
Gleboff Law Group PLLC
1717 McKinney Avenue, Suite 700
Dallas, Texas 75202
*Via ECF*

Bruce S. Londa
Jeanne M. Hamburg
Mitchell Mandell
Danielle M. DeFilippis
Norris McLaughlin & Marcus, P.A.
875 Third Avenue, 8th Floor
New York, New York 10022
*Via ECF*

/s/ Rupert F. Barron
Rupert F. Barron

20120190.20120190/1460115.1